NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-3401
_____

UNITED STATES OF AMERICA

v.

ALONZO LAMAR JOHNSON,

Appellant
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
(2-08-cr-00374-013)
District Judge:  Honorable Joy Flowers Conti
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
October 30, 2015
_____

Before: GREENAWAY, JR., SCIRICA, and ROTH, *Circuit Judges*.

(Opinion Filed:  January 26, 2016)
_____

OPINION*
_____

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

GREENAWAY, JR., *Circuit Judge*.

Alonzo Lamar Johnson appeals from his conviction for conspiracy to distribute and possess with intent to distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine, and fifty grams or more of a mixture and substance containing a detectable amount of cocaine base, in violation of 21 U.S.C. § 846. Johnson asserts that: (1) the evidence presented at trial was sufficient to establish only a buyer-seller relationship between him and members of the charged conspiracy, not that Johnson was himself a member of that conspiracy, or, in the alternative, that the government established multiple conspiracies, resulting in an impermissible variance between the indictment and the proof adduced at trial; (2) the trial court erred in allowing opinion testimony by a lay witness and fact testimony by an expert witness; (3) the prosecutor committed misconduct in his closing argument; (4) Johnson's sentence is both procedurally and substantively unreasonable and is, moreover, based on a purported prior offense that was not properly presented to the jury; and (5) the District Court erred in denying Johnson's motion to suppress the wiretap evidence. For the following reasons, we will affirm.[1]

---

[1] The District Court had jurisdiction over this case pursuant to 18 U.S.C. § 3231; we have jurisdiction under 28 U.S.C. § 1291.

Johnson argues first that the evidence was insufficient to support his conspiracy conviction, either because it established only a buyer-seller relationship between Johnson and Anthony Hoots, who pleaded guilty to having been a member of the Alford conspiracy, or because the government established a conspiracy between Johnson and Hoots separate and distinct from the larger Alford conspiracy for which Johnson was indicted.[2]

We apply a "particularly deferential standard" to challenges to the sufficiency of the evidence: "[w]e 'review the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt[] beyond a reasonable doubt.'" *United States v. Caraballo-Rodriguez*, 726 F.3d 418, 430 (3d Cir. 2013) (en banc) (second alteration in original) (quoting *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005)). "To establish a conspiracy, the government must prove beyond a reasonable doubt: (1) a shared unity of purpose; (2) an intent to achieve a common illegal goal; and (3) an agreement to work toward that goal." *United States v. John-Baptiste*, 747 F.3d 186, 204–05 (3d Cir.) (citations omitted), *cert. denied sub nom. Brooks v. United States*, 134 S. Ct. 2324 (2014), *and cert. denied sub nom. Edwards v. United States*, 134 S. Ct. 2889 (2014).

---

[2] The government argues that Johnson preserved only the multiple-conspiracy theory and not the buyer-seller-relationship theory in light of the way in which he framed his motion for acquittal below. Because we find the evidence sufficient to support his conviction for participation in the charged conspiracy, we need not parse Johnson's claim.

Johnson is correct that "a simple buyer-seller relationship, without any prior or contemporaneous understanding beyond the sales agreement itself, is insufficient to establish that the buyer was a member of the seller's conspiracy." *United States v. Perez*, 280 F.3d 318, 343 (3d Cir. 2002) (quoting *United States v. Gibbs,* 190 F.3d 188, 198 (3d Cir. 1999)). Nevertheless, "even an occasional supplier . . . can be shown to be a member of the conspiracy by evidence, direct or inferential, of knowledge that she or he was part of a larger operation." *United States v. Price*, 13 F.3d 711, 728 (3d Cir. 1994) (citation omitted). Johnson is also correct that, "when a single conspiracy is charged in the indictment and the evidence at trial proves only the existence of multiple, unrelated conspiracies, there is a variance," or impermissible discrepancy between the charged conduct and the proven conduct. *Perez*, 280 F.3d at 346 (citation omitted). "To establish a single conspiracy," however, "the prosecutor need not prove that each defendant knew all the details, goals or other participants." *Id.* at 347 (*quoting* United *States v. Padilla,* 982 F.2d 110 (3d Cir. 1992)). Rather, the prosecution must establish that a defendant was aware that he or she was part of a broader operation. *Perez*, 280 F.3d at 347 (citation omitted).

Here, the evidence establishes that Johnson was part of the charged conspiracy. Specifically, Hoots testified that, from 2007 through 2008, he would purchase cocaine from—and sometimes co-purchase cocaine with—his friend Eric Alford; that Johnson regularly purchased 4.5 ounces a week from Hoots, sometimes on credit, during this

4

period; and that Johnson also asked Hoots to sell cocaine to Johnson's cousin, Howie

Morrison. Moreover, phone records indicate that Johnson inquired about the status of

drug shipments that Hoots was to receive from his suppliers. A rational trier of fact could

interpret these inquiries to reflect awareness of a larger drug operation. We therefore

conclude that there is sufficient evidence to support the jury's determination that Johnson

was a member of the charged conspiracy.[3]

Turning now to the improper testimony arguments, Johnson concedes that he did

not object to the lay witness's testimony below, but avers that he preserved his claim

concerning the expert's testimony.[4] We accordingly review the first argument for plain

error[5] and the second for abuse of discretion.[6]

---

[3] Because we find that the evidence supports Johnson's participation in the charged conspiracy, we need not reach his alternative theory of multiple conspiracies.

[4] The government contends that Johnson's objections were on a different ground than the one he relies on here and that his argument as to the expert witness's testimony should therefore be reviewed for plain error. Because we find that Johnson's claim of error lacks merit, we need not reach this argument, either.

[5] "For reversible plain error to exist, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) which seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Paladino*, 769 F.3d 197, 201 (3d Cir. 2014) (quoting *United States v. Tai,* 750 F.3d 309, 313–14 (3d Cir. 2014)). An error that "affec[ts] substantial rights . . . in most cases . . . means that the error must have been prejudicial: It must have affected the outcome of the district court proceedings." *United States v. Olano*, 507 U.S. 725, 734 (1993).

[6] *See, e.g.*, *United States v. Mitchell*, 365 F.3d 215, 233 (3d Cir. 2004) ("It is well-settled that, as a general matter, we review a district court's decision to admit expert testimony for abuse of discretion.").

We find no plain error in the lay testimony by the case agent as to the content of call #2492. Although, as Johnson argues, the agent did offer an expansive interpretation of a sentence—one that included suppositions as to the motivations underlying a particular comment—the evidence, as explained above, was sufficient to support Johnson's conviction, and this testimony, to which defense counsel voiced no complaint during trial, did not "affect[] the outcome of the district court proceedings." *Olano*, 507 U.S. at 734.

We similarly find no abuse of discretion in the District Court's decision to allow the government's drug-trafficking expert to testify as to the meaning of certain slang or code words used during the intercepted phone conversations. Johnson argues that the meaning of these terms was not "beyond the ken of the jury" as is required of expert testimony because two fact witnesses—Hoots and the case agent—had already testified as to the content of these calls. This argument is without merit.

"[I]t is well established that experienced government agents may testify to the meaning of coded drug language under Fed. R. Evid. 702." *United States v. Gibbs*, 190 F.3d 188, 211 (3d Cir. 1999) (collecting cases). The existence of overlap between admissible expert testimony and fact witness testimony does not bar the expert's intervention, *United States v. Amuso*, 21 F.3d 1251, 1264 (2d Cir. 1994), nor does explanatory testimony by fact witnesses preclude expert testimony by bringing coded

6

drug terminology within the ken of the average juror, *cf. United States v. McGlory*, 968 F.2d 309, 352–53 (3d Cir. 1992) (Becker, J., concurring) (lamenting absence of expert testimony as to code used in recorded conversations despite explanatory testimony by fact witnesses).

Johnson next argues that the prosecutor's closing remarks require reversal. Johnson asserts that the prosecutor:  (1) misstated the law of conspiracy; (2) denigrated Johnson, his co-defendant Jerome Kelly, and defense counsel by calling their arguments "offens[ive]"; and (3) accused the defendants of calling the government witnesses "liars." We review these unpreserved claims for plain error.

"[A] criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial." *United States v. Young*, 470 U.S. 1, 11 (1985).  "In evaluating the prosecutor's conduct, we must decide 'whether [his] remarks, in the context of the entire trial, were sufficiently prejudicial to violate defendant's due process rights.'" *United States v. Adams*, 759 F.2d 1099, 1111 (3d Cir. 1985) (quoting *United States v. Scarfo,* 685 F.2d 842, 849 (3d Cir. 1982)).  Here, we find that none of the complained of comments violate Johnson's due process rights.

First, the prosecutor's generalized remarks about cocaine production and

distribution do not undermine the accuracy of his discussion of the charged conspiracy. Second, the prosecutor's statement that certain suggestions by defense counsel were unbelievable and the posing of the rhetorical question as to whether those suggestions "offend [the jurors'] sensibility" are each permissible. As we have stated, "there is a distinction between comments directed at the tactics and arguments advanced by defense counsel and those aimed at the character of the attorneys themselves, with nothing inherently improper about the former." *United States v. Lore*, 430 F.3d 190, 213 (3d Cir. 2005) (collecting cases in which prosecutors commented critically, but innocuously, on defense counsels' tactics). Finally, the prosecutor's statements that defense counsel had labelled certain government witnesses "liar[s]," J.A. at 1165, are not misconduct; rather, they refer to comments by defense counsel such as "the Government has presented to you chapter after chapter of the book of fiction that we call this trial," J.A. at 1124.

In short, we perceive no "denial of due process" in these alleged instances of prosecutorial misconduct to which defense counsel made no contemporaneous objection. *United States v. Lee*, 612 F.3d 170, 194 (3d Cir. 2010) ("A prosecutor's comments can create reversible error if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637, 643 (1974))). Here, there have been no comments that have so infected the trial as to meet this standard.

We now turn to the two arguments Johnson advances in appealing from his

8

sentence. First, Johnson challenges both the procedural and the substantive reasonableness of his sentence, an argument he raised below. In our review of Johnson's sentence, "we must first ensure that the District Court committed no significant procedural error in arriving at its decision." *United States v. Howe*, 543 F.3d 128, 132–33 (3d Cir. 2008) (citation omitted). "If we determine that the district court has committed no significant procedural error, we then review the substantive reasonableness of the sentence under an abuse-of-discretion standard, regardless of whether it falls within the Guidelines range." *Id.* (quoting *United States v. Wise,* 515 F.3d 207, 218 (3d Cir. 2008).

To assess the procedural reasonableness of Johnson's sentence, we review the District Court's decision for errors "such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Gall v. United States*, 552 U.S. 38, 51 (2007). Johnson contends that the District Court's failure to meaningfully consider the sentencing disparity argument he raised pursuant to 18 U.S.C. § 3553(a)(6) constituted procedural unreasonableness. However, "[t]he 'need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[]' . . . is just one factor (if relevant) that should be balanced against the others (again, if

9

relevant)." *United States v. Charles*, 467 F.3d 828, 833 (3d Cir. 2006) (quoting 18 U.S.C. § 3553(a)(6)). Here, the District Court considered this factor, but found that Johnson's background and past convictions warranted the sentence imposed. We find no merit in Johnson's procedural unreasonableness argument and therefore turn to his claim that his sentence is substantively unreasonable.

Johnson argues that the sentence he received is substantively unreasonable in light of this Court's direction to exercise discretion in balancing the Section 3553(a) factors in *United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006), as well as subsequent changes to offense levels and the application of recidivist enhancements. Here, the District Court did exercise its discretion: it determined that, although "the guideline provisions are 360 months to life imprisonment," App. at 134, a 360-month sentence "would have been too much, according to this Court's determination and, therefore, the 300 months was what was appropriate," App. at 149. We are satisfied that the District Court properly exercised its discretion in balancing the sentencing factors. Further, this Court has explicitly stated that "a post-sentencing amendment reducing the base offense level applicable to a particular offense is . . . not applied retroactively to cases on appeal." *Wise*, 515 F.3d at 220 (citation omitted). Accordingly, considering both the totality of the circumstances and the sentencing judge's "superior position to find facts and judge their import under § 3553(a)," *Gall*, 552 U.S. at 51 (citation omitted), we reject Johnson's contention that his sentence was substantively unreasonable.

10

Second, Johnson argues that "any fact that increases the mandatory minimum [of a sentence] is an 'element' that must be submitted to the jury," *Alleyne v. United* States, 133 S. Ct. 2151, 2155 (2013), and that the past convictions that led to his sentence enhancement should therefore have been presented to the jury. Johnson contends that *Alleyne* casts doubt upon the Supreme Court's decision in *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), in which the Court "recognized a narrow exception to this general rule for the fact of a prior conviction." *Alleyne*, 133 S. Ct. at 2160 n.1. In *United States v. Blair*, 734 F.3d 218, 227 (3d Cir. 2013), *cert. denied*, 135 S. Ct. 49 (2014), *reh'g denied*, 135 S. Ct. 743 (2014), this Court states that prior offenses remain a narrow exception to the jury-submission rule. Indeed, this Court specifically rejected the argument that Johnson advances: "*Alleyne* do[es] nothing to restrict the established exception under *Almendarez–Torres* that allows judges to consider prior convictions." *Blair*, 734 F.3d at 227. In light of this binding precedent, we reject as meritless Johnson's challenge on this ground.[7]

Finally, we consider Johnson's argument that the District Court's decision not to suppress wiretap evidence collected on the strength of an order bearing a stamped, rather than handwritten, signature requires reversal. We find that this clearly constitutes a "technical defect[] not warranting suppression of the evidence discovered as a result of

---

[7] Johnson concedes that the *Almendarez-Torres* exception "remains intact, for now," and challenges his sentence on this ground merely "[t]o preserve the issue." (Appellant Br. 58)

the electronic surveillance." *United States v. Traitz*, 871 F.2d 368, 379 (3d Cir. 1989).[8]

We reject Johnson's argument to the contrary, particularly because the District Judge whose signature the document bore testified to having authorized the warrant.

CONCLUSION

We find that Johnson's conviction is supported by sufficient evidence and that neither the testimony he alleges to be improper nor the comments by the prosecutor of which he complains require reversal. We similarly find Johnson's appeal from his sentence and from the District Court's denial of his motion to suppress unavailing. For the foregoing reasons, we will affirm.

---

[8] Because this argument is plainly without merit, we do not enter into the details of whether the deficient warrant—which did not directly lead to any intercepted calls involving Johnson—had a significant enough impact on the issuance of later warrants— which did result in such interceptions— to confer standing on Johnson to challenge the deficient warrant as an "aggrieved person" under 18 U.S.C. § 2518(10)(a)(iii).